# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

PREFERRED FINANCIAL SERVICES, INC., )
f/k/a PREFERRED CONSULTANTS, INC., f/k/a )
PREFERRED BUSINESS SERVICES, INC., )
and EDWIN SWAN, )
                       )
             Plaintiffs, )
                       )
           v. )        C.A. No. CPU4-15-001583
                       )
BUSINESS BUILDERS FOR )
ENTREPRENEURS, LLC, )
                       )
             Defendant. )

Andres Gutierrez de Cos, Esquire
Andres de Cos, LLC
4708 Kirkwood Highway, 2nd Floor
Wilmington, DE 19808
 *Attorney for Plaintiff*

James W. Owen, Sr., Esquire
James W. Owen, P.A.
Two Righter Parkway, Suite 125
Wilmington, DE 19803
 *Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

Preferred Business Services, Inc. and Edwin Swan ("Swan") (collectively, "Plaintiffs") brought this breach of contract action against Business Builders for Entrepreneurs, LLC ("Defendant") to recover damages allegedly owed in connection with a business agreement. Defendant purchased certain business assets and property owned by Plaintiff and agreed to make installment payments toward the purchase. Defendant made most of the payments as required, but failed to remit the final payment. Defendant claimed that Plaintiffs had violated a non-compete covenant contained within the agreement.

On May 12, 2015, Plaintiffs filed a complaint against Defendant for breach of contract. In its answer, Defendant denied liability and counterclaimed for the amount of damages it incurred as a result of Plaintiffs' alleged violation of a non-compete covenant. On June 8, 2016, the Court held trial. Defendant conceded that it failed to remit the final payment, but argued that it was relieved of its contractual duty to make the final installment payment because Plaintiffs violated the non-compete covenant. At the end of trial, the Court reserved its decision. This is the Court's Opinion after trial.

## FACTUAL BACKGROUND

This is a dispute between two entities engaged in the business of providing accounting and tax preparation services.[1] On September 30, 2011, Plaintiffs and Defendant executed an Agreement of Sale (the "Agreement") for Plaintiff's client list as set forth in the Agreement and the name "Preferred Bus. Services, Inc. d/b/a Preferred Business Services" in exchange for $100,000.00.[2] The parties also agreed that Plaintiffs would be subject to certain restrictions as

---

[1] Swan is the Principal of Preferred Business Services, Inc. and Timothy D. Humphreys ("Humphreys") is the Principal of Defendant. Both Swan and Humphreys were involved in negotiating and executing the contract. At trial, both Swan and Humphreys testified on behalf of their respective entities. Christine Wesley ("Wesley"), who provides billing, accounting, and contract development services for Defendant, also testified on Defendant's behalf.

[2] Jt. Ex. A, p. 1. The parties agreed that Defendant would "pay a multiple of 1.00 times the weighted average of annual gross billings and collections not to exceed a total Purchase Price of $100,000.00." *Id.* at p. 2. The parties further agreed to determine the Purchase Price "by using a weighted average approach as follows: 50% of the

2

outlined in a Non-Compete Covenant within the Agreement (the "Non-Compete Covenant").[3] Under the Non-Compete Covenant, Plaintiffs agreed "to not engage in the practice of public accounting either in [Plaintiffs'] own name or under the name of another, as a principal or as an employee, within a twenty-five (25) mile radius of all places of business of [Plaintiffs] for a period of five (5) years."[4] The Non-Compete Covenant also prohibited Plaintiffs from, *inter alia*, accepting business from "any present or past clients of [its] accounting firm."[5] The Non-Compete Covenant further provided that in the event of a breach, the purchase price would be reduced by two times the amount of fees paid by the clients lost as a result of the breach, unless Plaintiffs could pay a "replacement fee" that would compensate Defendant for any lost clients.[6]

In conjunction with the Agreement, Defendant executed a Promissory Note (the "Note") and agreed to pay Plaintiffs "the principal sum of $65,000.00, without defalcation, with interest at the simple annual rate of Four Percent (4%)," in five $10,000.00 installments, plus accrued interest.[7] Under the Note, Defendant agreed that it would pay the outstanding principal balance and accrued interest on December 31, 2014. Defendant made a $35,000.00 down payment on the purchase price and proceeded to make payments to Plaintiffs in accordance with the Agreement and Note.

On December 9, 2014, Plaintiffs received a check from Defendant in the amount of $15,185.88, which represented the final payment of the purchase price. Defendant, however,

---

billings and collections for the first 12 months plus 50% of the billings and collections for months 13–24." *Id.* The Purchase Price would then be adjusted after twenty-seven months from the Closing date to account for the actual services provided to existing clients and new clients, and payments made to Plaintiffs for future services. *Id.* at 2–3.

[3] Jt. Ex. A, p. 10.

[4] Jt. Ex. A, p. 10.

[5] Jt. Ex. A, p. 11.

[6] Specifically, the Covenant provides that in the event of a breach, "the balance due on the Note shall be reduced by two times (2x) the fees over the previous twelve (12) months paid by the client(s) who case using [Defendant's] services. Provided however, [Plaintiffs] may substitute clients for these lost clients with revenues equal to two times (2x) the fees of the clients taken." Jt. Ex. D, p. 11.

[7] Jt. Ex. A, p. 25. These installments were to be made on the following dates: October 1, 2012, April 1, 2013, October 1 2013, April 1, 2014, and October 1, 2014.

3

stopped payment on the check on December 12, 2014, because Defendant believed that Plaintiffs accepted business from its past clients in violation of the Non-Compete Covenant.[8]

On May 12, 2015, Plaintiffs initiated this litigation. Plaintiffs claimed that Defendant breached the Agreement by failing to remit the final payment. Defendant denied liability and claimed that it withheld the final payment because Plaintiffs breached the Non-Compete Covenant. Defendant then counterclaimed for damages resulting from the alleged breach of the Non-Compete Covenant. The Court held trial on June 8, 2016. At trial Humphreys testified that he was suspicious that Plaintiffs had poached clients from the client list that they sold to Defendant. Humphreys further testified that those suspicions were confirmed after this litigation ensued when, in their response to Defendant's Interrogatories, Plaintiffs admitted that Swan's separate entity, Preferred Tax Service, Inc., prepared 2014 Corporate Returns for four different corporate clients that were sold to Defendant as part of the Agreement. This occurred after Defendant failed to remit the final payment.[9] In support of Defendant's claim for damages, Wesley—who provides billing, accounting, and contract development services for Defendant— testified that she reviewed the history of these clients and verified the amount of fees that Defendant would have collected from these clients had Plaintiffs not breached the Agreement.

At the end of trial, Plaintiffs maintained that Defendant did not prove that Plaintiffs breached the Non-Compete Covenant and argued that Defendant's failure to remit the final payment constituted a material breach. The Court permitted the parties to submit supplemental

---

[8] On December 12, 2014, Humphreys sent an email to one of Plaintiff's employees, that stated, *inter alia*, "[J]ust so you know, I stopped payment on the check. I found out first hand that clients we bought have been using your services – that certainly was not the spirit of our deal. We will need to go back and analyze the receipts to recalculate the purchase price. Tell [Swan] to call me if he has any questions." Jt. Ex. D, p. 39.

[9] Swan prepared 2014 Corporate Returns for Honeycutts Lawn Maintenance, Inc. on July 23, 2015; Rasheedah's Exquisite Hair Designs, Inc. on September 15, 2015; Sansone's Seafood, Inc. on July 29, 2015, and Upland AutoService, Inc. on March 30, 2015.

4

briefing on the issue of whether Defendant committed a material breach and reserved its decision.

## DISCUSSION

In order to prevail on their breach of contract claim, Plaintiffs must prove by a preponderance of the evidence that: (1) an agreement existed between Plaintiffs and Defendant; (2) Defendant breached an obligation imposed by the contract; and (3) as a result of that breach, Plaintiffs suffered damages.[10] It is undisputed that Plaintiffs and Defendant entered into the Agreement, and that Defendant failed to remit the final payment as provided by the Agreement and corresponding Note. The disputed issue before the Court is whether Defendant committed a material breach when it failed to remit the final payment. Defendant contends that it did not materially breach the Agreement. It claims that it withheld the final payment because Plaintiffs breached the Non-Compete Covenant. To the contrary, Plaintiffs contend that they did not violate the Non-Compete Covenant and that Defendant's nonpayment was a material breach that relieved them of their contractual obligations under the Agreement.

A breach of contract occurs by a party's non-performance, repudiation, or both.[11] "A slight breach by one party, while giving rise to an action for damages, will not necessarily terminate the obligations of the injured party to perform under the contract."[12] Essentially, the "nonperformance by an injured party when the breaching party committed only a slight breach would constitute a breach of contract by the injured party."[13] On the other hand, a material

---

[10] *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[11] *Restatement (Second) of Contracts* (the "*Restatement*") § 236 (1981).

[12] *Eastern Elec. & Heating, Inc. v. Pike Creek Prof'l Ctr.*, 1987 WL 9610, at *4 (Del. Super. Apr. 7, 1987) (citing 11 *Williston on Contracts* § 1292, at 8 (3d ed. 1968)).

[13] *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *10 (Del. Ch. July 24, 2013), *aff'd sub nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015) (citing *BioLife Solutions, Inc v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003)).

breach of contract discharges the injured party's duty of performance under the contract.[14] A material breach is "a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract."[15]

Defendant argues that even if it breached the Agreement, it was justified in doing so because Plaintiffs had already breached the Agreement by violating the Non-Compete Covenant. The evidence and testimony before the Court does not support this contention. There is little testimony or evidence demonstrating that Plaintiffs violated the Non-Compete prior to Defendant's failure to make the final payment. Throughout trial, Defendant presented evidence that it was suspicious that Plaintiffs had violated the Non-Compete Covenant, however, Defendant was unable to provide the Court with any concrete evidence indicating that Plaintiffs breached the Agreement prior to Defendant's last payment. First, Defendant's suspicion was based on statements made by its employees who did not testify at trial. Second, although Defendant maintains that its suspicions were confirmed when Plaintiffs responded to Defendant's Request for Interrogatories, the record is void of any evidence definitively finding that the Non-Compete Covenant was actually breached. There is simply not enough evidence in the record to support a finding that Plaintiffs did in fact violate the Non-Compete Covenant. Notwithstanding Plaintiff's Interrogatory Responses, the Court cannot, on the scant record, find that it breached the Non-Compete Covenant.[16]

---

[14] *Tektree, LLC v. Borla Performance Indus., Inc.*, 2013 WL 5230705, at *4 (Del. Com. Sept. 16, 2013) (quoting *Brasby v. Morris*, 2007 WL 949485, at *4 (Del. Super. Mar. 29, 2007) (quoting *BioLife Solutions, Inc.*, 838 A.2d at 278)).

[15] *Tektree, LLC*, 2013 WL 5230705, at *4 (quoting *Shore Investments, Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *5–6 (Del. Super. Nov. 28, 2011)).

[16] Plaintiffs maintain that their preparation of the corporate returns was outside of the public accounting sphere and did not violate the Non-Compete Covenant.

Moreover, to allow Defendant to withhold payment based solely on suspicions of Plaintiff's breach of the Non-Compete Covenant would be to sanction self-help action by parties who claim to be aggrieved under a contract. This is not the law in Delaware.[17] The proper course of action by Defendant would have been to make the final payment and then upon confirmation that Plaintiffs violated the Non-Compete Agreement, bring an action in this Court. Because Defendant failed to do that, and instead withheld its final payment, it committed the first material breach, thus repudiating the Agreement.

## CONCLUSION

For the foregoing reasons, on Plaintiffs' claim for breach of contract, the Court enters judgment in favor of Plaintiffs and against Defendant in the amount of $15,185.88, plus interest, costs, and fees. On Defendant's counterclaim, the Court enters judgment in favor of Plaintiffs.

**IT IS SO ORDERED this 30th day of August, 2016.**

_____
Sheldon K. Rennie,
Judge

---

[17] *See Rockwell Automation, Inc. v. Kall*, 2004 WL 2965427, at *3 (Del. Ch. Dec. 15, 2004) ("[A party] may not avoid his contractual obligations under [a contract] through self-help.").